UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TIAN LONG FASHION CO., LTD.,

                Plaintiffs,                13 Civ. 8258

    -against-                          OPINION

FASHION AVENUE SWEATER KNITS, LLC,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        HANG & ASSOCIATES, PLLC
        136-18 39TH Avenue, #1003
        Flushing, NY 11354
        By:  William Brown, Esq.
            Jian Hang, Esq.
        Kevin Vorhis, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/25/16

        Attorneys for Defendant

        SILLS CUMMIS & GROSS P.C.
        101 Park Avenue, 28th Floor
        New York, NY 10178
        By:  Kenneth Schachter, Esq.

**Sweet, D.J.**

Defendant Fashion Avenue Sweater Knits, LLC ("Fashion Avenue" or the "Defendant") has moved pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting partial summary judgment to dismiss the claim of plaintiff Tian Long Fashion Co., Ltd. ("Tian Long" or the "Plaintiff") for air freight costs.

Based on the facts and conclusions set forth below, the motion of the Defendant for partial summary judgment is granted in part and denied in part.

**Prior Proceedings**

During the period 2008 through 2010, Fashion Avenue entered into numerous agreements with Tian Long for Tian Long to manufacture and deliver certain sweaters to Fashion Avenue.

In 2010, the parties stopped doing business as a result of disputes between the parties over certain performance issues. On November 19, 2013, Tian Long brought this action alleging unpaid invoices of $1,316,223.12, unreasonable

1

chargebacks of $149,679.15, unreasonable reductions of $191,582 and $712,751.30 in unpaid airfreight costs.

The instant motion was heard and marked fully submitted on March 24, 2016.

**The Facts**

The facts are contained in the Defendant's Statement of Undisputed Material Facts, the Plaintiff's Counterstatement of Material Facts in Dispute and affidavits of Ronald Hollandsworth, CEO of Fashion Avenue ("Hollandsworth"), Kenneth Schachter, counsel Fashion Avenue, and Xiao Wen Gao, general manager of Tian Long ("Gao") and are not in dispute except as noted below.

Fashion Avenue is a New York limited liability company engaged in the business of designing, manufacturing, importing and selling women's fashion knitted garments to retailers throughout the United States.

Tian Long is a sweater manufacturer located in the People's Republic of China. The sweater business is seasonal and

2

Fashion Avenue produces different sweaters for different seasons.

It is imperative to Fashion Avenue's business model that it receive garments by dates agreed upon with a manufacturer. If Fashion Avenue does not receive garments by the agreed upon date, it cannot meet the required delivery dates set by its retailers, who seek to sell the sweaters in and for the appropriate season.

After all the terms of a particular sale were negotiated, Fashion Avenue would send Tian Long a purchase order memorializing the parties' agreement. Though Tian Long asserts that on a number of occasions, negotiations continued to take place after Fashion Avenue sent Tian Long a purchase order, Tian Long also asserts that the purchase agreement was not a complete memorialization of the parties' agreement. The parties agree that Tian Long did not have its own purchase document or contract that it would send to Fashion Avenue.

On November 19, 2013, over two years after the parties stopped doing business, Tian Long filed its complaint against Fashion Avenue alleging, in part, that it is due unpaid air

3

freight costs for shipping various women's sweater garments to Fashion Avenue. Tian Long claims it is owed air freight costs for the specific purchase orders identified in Exhibit 4 to the Complaint (the "Purchase Orders") in the amount of $712,751.30. Fashion Avenue contests that it owes that amount for air freight.

The Purchase Orders were sent to Tian Long between January 18, 2010 and September 16, 2010, all of which were for various styles of women's sweaters. Each Purchase Order provided a Delivery, Duty Paid ("DDP") for each garment, which included all costs to ship the garments to Fashion Avenue in the United States. (Hollandsworth Dec.)

DDP means that the shipper is responsible for choosing the mode of transportation and paying all the shipping costs and duties involved in transporting the goods to the destination named in the Purchase Order. DDP terms were included in each of the Purchase Orders for which Tian Long now seeks to be paid the air freight costs. Fashion Avenue claims that for certain Purchase Orders for which Tian Long was not able to make timely delivery of the sweaters, Tian Long shipped those goods by air carrier. Tian Long claims that a number of deliveries were sent

4

via air at Fashion Avenue's request. For certain of those air freight shipments Fashion Avenue agreed to pay Tian Long a portion of the air freight costs. Fashion Avenue claims that in each instance in which Fashion Avenue agreed to pay a portion of the air freight costs, it sent an email to Tian Long confirming the agreement and did pay for those costs. Fashion Avenue claims that in each instance where Fashion Avenue agreed to pay a portion of the air freight costs, the corresponding Tian Long invoice included a charge for that air freight and stated either (1) "FA [Fashion Avenue] AGREE TO PAY 50% AIR" OR (2) "FA [Fashion Avenue] PAY 50% AIR."

The specific Purchase Order numbers for which Fashion Avenue claims it agreed to pay a portion of the air freight costs are 51796, 51823, 51829, 52167, 52227, 52161, 51826, 52248, 52180, 52255, 52229, 52232, 52129, 51823 and 52299 (the "Air Freight Orders."). For every other Purchase Order issued under the DDP Incoterms (where Fashion Avenue did not expressly agree to pay air freight), the corresponding invoices did not mention or contain any charge for air freight. Fashion Avenue has already paid the air freight costs for those Air Freight Orders. Tian Long disputes this statement and believes there are

5

other invoices for which Fashion Avenue directed Tian Long to
use air freight and agreed to pay for the additional costs.

**The Applicable Standard**

Summary judgment is appropriate only where "there is
no genuine issue as to any material fact and ... the moving
party is entitled to a judgment as a matter of law." Fed. R.
Civ. P. 56(c). A dispute is "genuine" if "the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986). The relevant inquiry on application for summary judgment
is "whether the evidence presents a sufficient disagreement to
require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law." *Id.* at 251-52. A
court is not charged with weighing the evidence and determining
its truth, but with determining whether there is a genuine issue
for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*,
735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477
U.S. at 249). "[T]he mere existence of some alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement

6

is that there be no <u>genuine issue of material fact</u>." *Anderson*,
477 U.S. at 247-48 (emphasis in original).

**The Plaintiff Was Responsible for Transportation Costs**

Incoterms are a set of international commercial terms
published by the International Chamber of Commerce. See *St. Paul
Guardian Ins. Co. v. Neuromed med. Sys. & Support*, 2002 U.S.
Dist. LEXIS 5096, at* 9 (S.D.N.Y. Mar. 26, 2002). Incoterms are
the most widely recognized non-statutory definitions of trade.
See *S.K.I Beer Corp. v. Baltika Brewery*, 443 F. Supp. 2d. 313,
315 n.4 (E.D.N.Y. 2006). The terms "are used to allocate the
costs of freight and insurance in addition to designating the
point in time when the risk of loss passes to the purchaser."
See <u>id.</u> (internal quotations omitted).

The DDP incoterms allocate the total cost of freight
to the seller (i.e. Tian Long). Specifically DDP is defined as:

> The seller delivers the goods when the goods are
> placed at the disposal of the buyer, cleared for
> import on the arriving means of transport ready
> for unloading at the named place of destination.
> The seller bears all the costs and risks involved
> in bringing the goods to the place of destination
> and has an obligation to clear the goods not only
> for export but also for import, to pay any duty

> for both export and import and to carry out all
> customs formalities.

See *Apex Exps. v. U.S.*, 11-00291, 2013 Ct. Intl. Trade LEXIS
164, at *23 n. 7 (U.S.C.I.T. Dec. 31, 2013) (quoting Incoterms
2010 at 69.); THE INCOTERMS RULES, http://www. iccwbo.
org/products-and-services/trade-facilitation/incoterms-2010/the-
incotermsrules (last visited Oct. 23, 2015) [hereinafter
"Incoterms 2010"]; see also *SMS Demag, Inc. v. ABB Transmissione
& Distribuzone, S.P.A.*, 05-civ-00466, 2008 U.S. Dist. LEXIS
25637, at *42 (W.D. Pa. Mar. 31, 2008) (holding DDP meant that
the parties contemplated the seller would be responsible for
shipping the goods). The DDP terms place the obligation on the
seller to contract for the carriage of the goods and is used
irrespective of the method of transportation. See INCOTERMS 2010
(DDP is classified under "rules of any mode or modes of
transportation"); INCOTERMS 2000 ("the seller must contract at
his own expense for the carriage of the goods to the named place
of destination").

In this case, it is undisputed that Fashion Avenue
sent Tian Long Purchase Orders for all of the disputed
transactions. It is further undisputed that these Purchase
Orders incorporated the DDP Incoterms. Tian Long has put forth

8

no contradictory confirmatory document that it sent to Fashion
Avenue. Instead Tian Long claims that the terms were ambiguous
and ran contrary to the course of dealings between the parties.

Under Section 2-207 of the New York Uniform Commercial
Code ("UCC") a written confirmation sent within a reasonable
time of an oral agreement operates as an acceptance even if it
includes additional terms. See NY CLS U.C.C. § 2-207(1); see
also *Bayway Ref Co. v. Oxygenated Mktg. A.G.*, 215 F.3d 219, 223
(2d Cir. 2000); *Bazak Intern. Corp. v. Mast Industries, Inc.*, 73
N.Y.2d 113, 120, 538 N.Y.S. 2d 503, 508 (1989) (holding a
purchase order is sufficient to be a confirmatory document even
if it does not contain express words of confirmation). In this
case, the Purchase Orders serve as a written confirmation as
outlined by Section 2-207 of the UCC.

Where the parties to the contract are both merchants
within the meaning of UCC 2-104 such terms become part of the
contract unless: (a) the offer expressly limits the acceptance
to the terms of the offer; (b) they materially alter it; or (c)
notification of objection to them has already been given or is
given in within a reasonable time after notice of them is
received. See NY CLS UCC § 2-207(2)(a)-(c); see also *Bayway*

9

*Ref.*, 215 F.3d at 223; *Colorado-Arkansas-Texas Distrib. v. Am. Eagle Food Prods., Inc.*, 525 F. Supp. 2d 428, (S.D.N.Y. 2007). Here, there is no dispute that both parties were merchants. Further, none of the exceptions to UCC Section 2-104 would invalidate the express terms of the Purchase Orders. None of the exceptions apply because: (a) the offer did not limit acceptance; (b) the Purchase Orders did not materially alter the terms of the bargain; and (c) there was no notification within a reasonable time by Tian Long of a problem with the terms in the Purchase Orders.

Terms included in a confirmatory memoranda, such as a purchase order, between the parties intended to be a final written expression of their agreement may not be contradicted by written or oral communications between the parties made prior to or contemporaneous such a confirmatory memoranda. See *NY CLS UCC 2-202; Polygram, SA. v. 32093 Enterprises, Inc.*, 697 F. Supp. 132, 135 (E.D.N.Y. 1988) (holding invoices were a final written expression of the parties' agreement and could not be contradicted by extrinsic or parole evidence); *Battista v. Radesi*, 112 A.D. 2d 42, 491 N.Y.S. 2d 81 (4th Dep't 1985) (same). In this case, there are clear confirmatory memoranda for each transaction in the form of the purchase orders. Therefore,

no emails, phone calls, or other contradictory evidence can invalidate the express terms of the purchase orders.

The Court, however, may consider usage of trade to explain or supplement the terms in a confirmatory document, including Incoterms such as DDP. See NY CLS UCC 2-202(a); see also *Hagrpota v. Trading Distrib., Ltd. v. Oakley Fertilizer, Inc.*, 09 Civ. 9779, 2010 U.S. Dist. LEXIS 62039, at *12-13 (S.D.N.Y. Jun. 18, 2010) (interpreting incote1ms expressly incorporated into a confirmatory document under UCC 2-207 and finding those terms binding on the parties).

Tian Long retained the Purchase Orders without objection, and every Purchase Order sent by Fashion Avenue included the term DDP. As such, the DDP Incoterms were included as a binding term in every sales contract between the parties (i.e. the Purchase Orders). See NY CLS UCC § 2-207; see also *Hagrpota*, 2010 U.S. Dist. LEXIS at *18-19 (finding parties were bound to an arbitration clause contained in Incoterms 2000 where those terms were included in most of 30 confirmatory purchase orders sent over the course of two years).

11

On certain occasions, Tian Long made shipments of goods by air instead of by sea, which came at much higher cost to Tian Long and was often at the request of Fashion Avenue. However, a request to ship by air in order to meet certain deadlines does not shift the burden to pay for shipping to the buyer when the DDP Incoterms are used. There were several instances in which Fashion Avenue agreed to pay half of the costs to ship the goods by air. In each instance where Fashion Avenue consented to pay air freight, a corresponding confirmatory e-mail was sent. Moreover, every Tian Long Invoice sent to Fashion Avenue for the Air Freight Orders states either: (1) "FA [Fashion Avenue] AGREE TO PAY 50% AIR" or (2) "FA [Fashion Avenue] PAY 50% AIR". For every other Purchase Order (where Fashion Avenue did not expressly agree to pay air freight), the corresponding invoices did not contain these terms.

Tian Long has argued that in addition to the express confirmations to pay air freight, there were additional Purchase Orders as to which "my expectation and intent at the time of contracting with Fashion Avenue was that where expedited air shipment was requested, Fashion Avenue would pay for all or at least half of the shipping costs". (Gao Affid. ¶ 28). This

12

assertion fails to establish an agreement to modify the DDP Incoterm.

Tian Long claims that Fashion Avenue is responsible for 59 air shipments amounting to $712,751.30 in damages. (Gao Decl. at ¶ 13.) However, Tian Long admits that of those 59 shipments, Fashion Avenue only agreed to pay for the shipping in 17 instances. (Gao Decl. at ¶ 14.) Of those 17, Tian Long admits that Fashion Avenue did in fact pay for half of the shipping costs in 14 of the cases. (Gao Decl. at ¶ 15.) That means that there are only three of 59 total transactions in dispute. Those three Purchase Orders: 52227, 52129 and 52232, amount to $40,567.08 in costs, which is the only amount actually at issue in this motion. (Gao Decl. at ¶ 16.) Fashion Avenue submitted evidence that it already paid for the air shipping costs in association with one of the bills (Purchase Order 52232). (Hollandsworth Reply Decl., Exs. H, I.) While Fashion Avenue claims that it did not agree by email or on the actual purchase orders to pay for air shipping in connection with the other two transactions, Tian Long has created a disputed issue of material fact with respect to Purchase Orders 52227 and 52129.

13

Tian Long attempts to raise an issue of fact by
claiming the parties only contemplated the DDP Incoterms would
apply to shipments made by sea and points to one of ten items
listed under "Terms & Conditions." The specific Condition & Term
Tian Long references required that "[a]ll packing lists must be
submitted within 48 hours after ship sailed." (Opposition,
p. 6.) Based on this provision, Tian Long argues that the
Purchase Orders were ambiguous regarding what party was to pay
air freight, but this term does not create any ambiguity.

Ambiguity is "defined in terms of whether a reasonably
intelligent person viewing the contract objectively could
interpret the language in more than one way." *Atateks Foreign
Trade Ltd. v. Private Label Sourcing, LLC*, 07 Civ. 6665, 2009
U.S. Dist. LEXIS 54670, at *12-13 (S.D.N.Y. Jun. 23, 2009)
(quoting *Topps Co., Inc. v. Cadbuy Stani S.A.I.C.*, 526 F.3d 63,
68 (2d Cir. 2008)). "No ambiguity exists where the contract
language has 'a definite and precise meaning, unattended by
danger of misconception in the purport of the [contract] itself,
and concerning which there is not reasonable basis for a
difference of opinion." Id. (quoting *Law Debenture Trust Co. of
N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010).
"Thus, the court should not find the contract ambiguous where

14

the interpretation urged by one party would 'strain[] the contract language beyond its reasonable and ordinary meaning.'" *Debenture Trust Co. of N.Y.*, 595 F.3d at 467 (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957)). Here, it would strain the contract beyond its ordinary meaning to say that the entire contract was ambiguous and the DDP Incoterm does not apply simply because one of the terms refers to when packing lists must be sent to the other party. That the packing lists refer to when the ship sails, does not invalidate the DDP term as the two refer to different parts of the contract. No reasonably intelligent person would interpret these terms in any other way. That a text is complex or imperfect does not mean it is ambiguous. See *Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 1001).

Tian Long argues that there was a general course of dealing that Fashion Avenue would pay for half of the shipping in each instance in which they asked for shipping by air to meet a deadline. However, this is not the case. A course of dealing is a "sequence of previous conduct between parties which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." NY CLS UCC § 1-205. "Proof of such conduct is limited

15

to objective facts as distinguished from oral statements of agreement. *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F Supp. 987, 992 (S.D.N.Y. 1968). In this case, the conduct between the parties falls short of course of dealing because Fashion Avenue only paid for invoices for which it expressly agreed to pay and marked the Purchase Orders as such.

Even where there is a course of dealing the Court may not consider such facts for the purpose of contradicting the express terms of an agreement. See NY CLS UCC § 2-208(2); *Christiania General v. Great American Ins. Co.*, 979 F.2d 268, 274 (2d Cir. 1992) (finding that when they are clear, the express terms of the agreement control over the parties course of dealing); see also *Meda AB v. 3M Co.*, 969 F.Supp. 2d. 360, 378 (S.D.N.Y. 2013) (if a contract is not ambiguous the Court may not consider extrinsic evidence, including the parties course of dealing.) In this case, the express terms of the agreement and the Purchase Orders are clear and therefore govern the conduct of the parties. There is no established course of dealing to warrant requiring Fashion Avenue to pay for all or half of the air shipping in this case.

**Conclusion**

16

Defendant's motion for partial summary judgment is granted in part to the extent that Tian Long is responsible for all shipping costs (including air shipping), except for Purchase Orders as to which Fashion Avenue explicitly agreed to pay air freight. However, Defendant's motion is denied as to whether payment was made for the air freight on Purchase Orders 52227 and 52129 because it remains a disputed issue of material fact whether Fashion Avenue agreed to pay for air freight with respect to those two orders.

It is so ordered.

New York, NY
July 2( , 2016

ROBERT W. SWEET
U.S.D.J.

18